Gerald Grunsfeld, Esq.
Lazar Grunsfeld Elnadav LLP
1795 Coney Island Avenue
Brooklyn, NY 11230
(718) 947-7476
Gerry@LGELaw.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GERALD GRUNSFELD<br><br>　　　Plaintiff,<br><br>　　　　　　-*against*-<br><br><br>BRYAN BUI-TUONG AND PARLEY LABS, INC.<br><br>　　　Defendants, | **COMPLAINT**　22CV78<br><br>JURY TRIAL DEMANDED |

Plaintiff, by his attorneys, Lazar Grunsfeld Elnadav LLP, for his complaint, alleges, upon information and belief, as follows:

**JURISIDICTION AND VENUE**

1.This Court has federal diversity jurisdiction under 28 U.S.C. § 1332(a), and the amount in dispute exceeds $75,000.

2.Venue in this judicial district is proper under 28 U.S.C. § 1391(c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

**PARTIES**

3.Plaintiff is a resident of Brooklyn, New York, and a customer of Defendant.

4.Defendant Bryan Bui-Tuong is a resident of California.

5. Defendant PARLEY LABS, INC. ("PARLEY") is a California Corporation, headquartered in California, which does business across the United States, including in the State of New York.

6. Mr. Bui-Tuong is the owner of PARLEY, and directed its wrongdoing as set forth herein.

7. PARLEY is subject to jurisdiction in New York because it conducts business in New York, and because it entered into an agreement with, and conducted business with, Plaintiff, a New York resident.

8. Mr. Bui-Tuong is subject to jurisdiction in New York because he conducts business in New York.

9. Mr. Bui-Tuong is subject to jurisdiction in New York because he directed PARLEY's wrongdoing as set forth herein and PARLEY is subject to jurisdiction in New York.

10. Mr. Bui-Tuong is subject to Long Arm jurisdiction in New York pursuant to NY CPLR 302 and pursuant to California's Long Arm Jurisdiction statute.

## PARLEY DELIBERATELY MISREPRESENTED THE DATE IT WOULD FULFILL ORDERS FOR THE SALE OF NEBRA MINERS

11. In April 2021, there were numerous companies offering devices for sale that could "mine" Helium cryptocurrency.

12. One such company was a company located in England called Nebra, LTD ("NEBRA").

13. NEBRA markets its Helium Miners as a "Nebra Hospot Helium Miner" ("Nebra Miner').

14. PARLEY and NEBRA have a distribution agreement whereby PARLEY distributes Nebra Miners in the United States.

15. On April 11, 2021, Plaintiff purchased ten Nebra Miners from PARLEY for $3, 603 (Order# 10774).

16. Order# 10774 was listed as part of the 4th Batch of Nebra Miners that would be shipped ("Batch 4").

17. At the time PARLEY sold these Nebra Miners to Plaintiff, PARLEY stated it would ship the devices in approximately June 2021.

18. Plaintiff also purchased dozens of Helium miners in April from a Chinese company called Bobcat.

19. At the time Plaintiff purchased Helium Miners from Bobcat in April 2021, Bobcat stated that the miners would be delivered within eight to twelve weeks from purchase.

20. Plaintiff placed approximately seven different orders with Bobcat, totaling 44 miners.

21. Bobcat delivered 100% of the miners Plaintiff ordered within the promised timeframe.

22. Rather than using all of the NEBRA miners to mine Helium, Plaintiff decided to resell several of the Nebra miners on a pre-sale basis, and to use the proceeds of these sales to buy more helium miners from Bobcat, some of which Plaintiff would resell on Ebay and some of which Plaintiff would use to mine Helium.

23. Plaintiff thus presold several of his ordered Nebra Miners on EBAY, with each of the miners selling for between $800 and $1,575, advising the customers in his Ebay listings that the devices were due to be delivered in June, 2021.

24. On June 3, 2021, and June 10, 2021, PARLEY sent Plaintiff e-mails advising that it was actively shipping Batch 1, and that Batches 2-3 would be shipped during June. The e-mail did not address a revised timeline for Batch 4 miners, and Plaintiff thus reasonably assumed that

3

PARLEY would ship his miners at the end of June or early July at the latest.

25. On June 17, 2021, PARLEY sent Plaintiff an e-mail advising that Batch 4 miners would be shipped at the end of July.

26. On July 9, 2021, PARLEY sent Plaintiff an e-mail advising that Batch 4 miners would be shipped at the end of July or at the beginning of August.

27. On July 9, 2021, PARLEY sent Plaintiff an e-mail advising that Batch 4 miners remained on schedule to be shipped as per its most recent estimate of end of July/beginning of August.

28. On September 3, 2021, PARLEY sent Plaintiff an e-mail advising that it would begin receiving Batch 4 miners in September.

29. On September 11, 2021, PARLEY sent Plaintiff an e-mail intimating that it was still on course to ship Batch 4 miners in September.

30. On October 4, 2021, PARLEY sent Plaintiff an e-mail advising that it would begin shipping Batch 4 miners at the end of October.

31. On October 25, 2021, PARLEY sent Plaintiff an e-mail advising that it would begin shipping Batch 4 miners at the beginning of November.

32. On November 4, 2021, PARLEY sent Plaintiff an e-mail advising that it would begin shipping Batch 4 miners in November.

33. On November 6, 2021, PARLEY sent Plaintiff an e-mail advising that it would begin shipping Batch 4 miners in November/December.

34. On December 16, 2021, PARLEY sent Plaintiff an e-mail advising that as it did not know when it could fulfill the Batch 4 Orders, it would be issuing refunds to all Batch 4 customers.

35. Upon information and belief, PARLEY has shipped Nebra miners to favored commercial customers, even though such customers placed their orders weeks and months after

Plaintiff and the rest of its non-commercial customers.

36. Notwithstanding that PARLEY had been stringing Batch 4 customers along for more than eight months at this point, it advised the customers that due to logistical difficulties, it would take up to two more months for PARLEY to issue refunds to its Batch 4 customers.

37. Mr. Bui-Tuong directed and controlled all of Parley's wrongdoing as set forth herein.

38. Had PARLEY not falsely advertised that they expected to ship Batch 4 Nebra miners by June, 2021, Plaintiff would have ordered these 10 miners from Bobcat instead, which orders would have been fulfilled by June.

39. Had PARLEY not sent Plaintiff repeated emails in which it repeatedly estimated it would ship Plaintiff's miners within the next few weeks, Plaintiff would have cancelled the PARLEY order and requested a refund, and used the funds obtained from the refund to order replacement miners from Bobcat.

### THE DAMAGES PLAINTIFF HAS SUSTSAINED AS A RESULT OF PARLEY'S FRAUD AND DECEPTIVE ADVERTIZING AND DECEPTIVE BUSINESS PRACTICES

40. Ebay and Paypal penalized Plaintiff for failing to ship the Nebra Miners to Plaintiff's customers in a timely manner.

41. These penalties included:

   a. Freezing funds due to Plaintiff;

   b. Downgrading Plaintiff's account status;

   c. Requiring Plaintiff to spend tens of hours gathering documents proving that he had sold the Nebra Miners on Ebay in good faith; and freezing Plaintiff's ability to sell anything on Ebay until it was satisfied that Plaintiff was not at fault for the delays.

   d. Assessing penalties against Plaintiff.

42. In addition, in order to ensure that the customers who had purchased his Nebra miners on Ebay were not disadvantaged, Plaintiff either refunded their payments or sent them RAK brand miners (which Plaintiff had also ordered in April, and which Plaintiff had intended to use to mine Helium).

43. Plaintiff has also missed out on six months (and counting) of Helium mining from those Nebra Miners which Plaintiff did not presell on Ebay and had intended to use to mine Helium.

44. In the six months since June 2021, the resale price of Helium miners has fallen from several thousand dollars per miner to $700-1000 per miner.

45. In June 2021, a group of five miners optimally placed one mile apart, could each be expected to mine approximately one-two helium per day. The current value of each Helium is approximately forty dollars and is expected to reach several hundred dollars per Helium in the next 1-2 years.

46. In addition, the Helium mined can be staked to earn approximately 8% interest (paid in Helium) per year.

47. In total, Plaintiff has sustained losses in excess of $75,000, and counting, as a result of PARLEY's conduct.

## FIRST CAUSE OF ACTION

**(Deceptive Practices and Deceptive Advertising, New York GBL §§ 349-350)**

48. Plaintiff repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this complaint.

49. PARLEY knew at the time it represented on its website that it would ship Batch 4 Nebra miners by approximately June 2021, that it would not be able to do so.

50. PARLEY knew at the time it represented on its website that it would ship Batch 4 Nebra miners by approximately June 2021, that it had no factual basis to represent that it would be

6

able to ship the Nebra 4 miners by approximately June 2021.

51. PARLEY knew that Plaintiff and the other customers who placed orders from PARLEY for Nebra miners prior to April 12, 2021, would reasonably rely on PARLEY's representation that it would ship such orders by approximately June 2021.

52. PARLEY knew at the time of its repeated e-mail updates, that contrary to its representations in its e-mails, it would not be able to ship the Batch 4 Orders a few weeks from the date of its e-mail update. .

53. PARLEY knew at the time of its repeated e-mail updates, that contrary to its representations in its e-mails, it had no basis to believe that it would be able to ship the Batch 4 Orders a few weeks from the date of its e-mail update.

54. PARLEY knew that Plaintiff and its other customers reasonably believed PARLEY when it represented in its E-mail updates that it would ship the Batch 4 Orders a few weeks from the date of its e-mail update.

55. PARLEY knew that Plaintiff and its other customers reasonably relied on PARLEY's E-mail updates, and as a result of such reliance, withheld from requesting refunds from PARLEY, between June and December of 2021.

56. In addition, PARLEY knew when it represented to Plaintiff and its other customers that due to logistical difficulties, it would need up to two months to issue its customers a refund, that this was untrue and that it could easily issue all outstanding refunds within two weeks or less.

57. Upon information and belief, PARLEY has falsely represented it requires up to two months to issue refunds, so as to delay as long as possible its return to the customers of their funds.

58. PARLEY's deceptive advertising and deceptive business practices were intended to deceived Plaintiff and all the consumers who purchased a Nebra miner from PARLEY.

59. PARLEY's deceptive advertising and deceptive business practices deceived

Plaintiff and all the consumers who purchased a Nebra miner from PARLEY.

60. As a result of Defendants' willful violations of New York GBL §§ 349-350, as set forth herein, Plaintiff seeks an Order compelling Defendants to repay Plaintiff the losses it caused him, plus treble damages, plus punitive damages plus attorneys' fees and costs.

## SECOND CAUSE OF ACTION

## (BREACH OF CONTRACT)

61. Plaintiff repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this complaint.

62. The parties entered into a contract, whereby PARLEY represented it would ship the Batch 4 Nebra miners by June 2021.

63. Plaintiff paid PARLEY $3,603 for ten Nebra miners to be delivered by June 2021, or thereabouts.

64. To date, PARLEY has not shipped Plaintiff any of the ten miners.

65. As a result of PARLEY's breach of contract, Plaintiff has sustained losses in excess of $75,000.

## THIRD CAUSE OF ACTION

## (FRAUD)

66. Plaintiff repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this complaint.

67. PARLEY knew at the time it represented on its website that it would ship Batch 4 Nebra miners by approximately June 2021, that it would not be able to do so.

68. PARLEY knew at the time it represented on its website that it would ship Batch 4 Nebra miners by approximately June 2021, that it had no factual basis to represent that it would be able to ship the Nebra 4 miners by approximately June 2021.

8

69. PARLEY knew that Plaintiff and the other customers who placed orders from PARLEY for Nebra miners prior to April 12, 2021, would reasonably rely on PARLEY's representation that it would ship such orders by approximately June 2021.

70. PARLEY knew at the time of its repeated e-mail updates, that contrary to its representations in its e-mails, it would not be able to ship the Batch 4 Orders a few weeks from the date of its e-mail update.

71. PARLEY knew at the time of its repeated e-mail updates, that contrary to its representations in its e-mails, it had no basis to believe that it would be able to ship the Batch 4 Orders a few weeks from the date of its e-mail update. .

72. PARLEY knew that Plaintiff and its other customers reasonably relied on PARLEY's E-mail updates, and as a result of such reliance, withheld from requesting refunds from PARLEY, between June and December of 2021

73. PARLEY knew that Plaintiff and its other customers reasonably relied on PARLEY's E-mail updates so as not to request refunds from PARLEY between June and December of 2021.

74. As a result of the aforementioned fraud, Plaintiff sustained losses believed to exceed $75,000.

75. Plaintiff seeks an Order compelling Defendants to repay Plaintiff the losses it caused him, plus treble damages, plus punitive damages plus attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)

76. Plaintiff repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this complaint.

77. PARLEY knew at the time it represented on its website that it would ship Batch 4

Nebra miners by approximately June 2021, that it would not be able to do so.

78. PARLEY knew at the time it represented on its website that it would ship Batch 4 Nebra miners by approximately June 2021, that it had no basis to believe it would be able to ship the Nebra 4 miners by approximately June 2021.

79. PARLEY knew that Plaintiff and the other customers who placed orders from PARLEY for Nebra miners prior to April 12, 2021, would reasonably rely on PARLEY's representation that it would ship such orders by approximately June 2021.

80. PARLEY knew at the time of its repeated e-mail updates, that contrary to its representations in its e-mails, it would not be able to ship the Batch 4 Orders a few weeks from the date of its e-mail update. .

81. PARLEY knew at the time of its repeated e-mail updates, that contrary to its representations in its e-mails, it had no basis to believe that it would be able to ship the Batch 4 Orders a few weeks from the date of its e-mail update. .

82. PARLEY knew that Plaintiff and its other customers reasonably believed PARLEY when it represented in its E-mail updates that it would ship the Batch 4 Orders a few weeks from the date of its e-mail update.

83. PARLEY knew that Plaintiff and its other customers reasonably relied on PARLEY's E-mail updates so as not to request refunds from PARLEY between June and December of 2021.

84. As a result of the aforementioned fraud, Plaintiff sustained losses believed to exceed $75,000.

85. PARLEY has unjustly enriched themselves at Plaintiff's expense.

86. PARLEY is wrongfully in possession of monies rightfully belonging to Plaintiff.

87. Equity and good conscience require that Defendants return these monies to Plaintiff,

together with punitive damages plus attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**Wherefore**, Plaintiffs seeks an Order compelling Defendants to repay Plaintiff the losses it caused him, plus treble damages, plus punitive damages, plus attorneys' fees and costs.

Dated: Brooklyn, New York
       January 5, 2022

                        LAZAR GRUNSFELD ELNADAV LLP

                             s/ <u>Gerald Grunsfeld, Esq</u>.
                             1795 Coney Island Avenue
                             Brooklyn, NY 11230
                             Gerry@lgelaw.com
                             (718) 947-7476
                             Attorney for Plaintiffs